IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Zachrich Small Business Investments, LLC, *et al.*, | ) ) ) | CASE NO.  1:25 CV 1228 |
| Plaintiffs, | ) ) | JUDGE DONALD C. NUGENT |
| v. | ) ) | |
| Carl Pallini, *et al.*, | ) ) | <u>MEMORANDUM OPINION</u> <u>AND ORDER</u> |
| Defendants. | ) ) ) | |

This matter comes before the Court upon the Motion of Defendants Carl Pallini and Tri

State Business Authority, LLC to Dismiss Plaintiffs' First Amended Complaint pursuant to

Fed. R. Civ. P. 12(b)(6) for Failure to State a Claim Upon which Relief may be Granted. (ECF

#16) The motion is fully briefed and ready for decision. For the reasons that follow,

Defendants' Motion to Dismiss is granted in part and denied in part.

**Factual and Procedural History**

Plaintiffs Zachrich Small Business Investments, LLC ("ZSB"), an Ohio limited liability

company and Peyton Zachrich, the managing member of ZSB bring this action against

Defendants Carl Pallini, a licensed business broker and Tri State Business Authority, LLC

("TSBA") a limited liability company through which Mr. Pallini conducted his business

brokerage activities asserting claims of Professional Negligence/Negligent Misrepresentation

(Count I), Fraudulent Inducement (Count II) and Civil Conspiracy to Commit Fraudulent

Inducement (Count III) and Unjust Enrichment (Count IV). First Amended Complaint

("FAC")(ECF #11)

Plaintiffs state that "this is an action for professional negligence and related claims

arising from Defendants' continuing breach of professional duties through their transmission of

materially false financial information and failure to correct known misrepresentations in

connection with Plaintiffs' $1.2 million acquisition of Glass Block Headquarters, Inc. ("GBHI"

or "Seller"), which closed on September 17, 2021." (ECF #11 ¶1) Defendants Pallini and

TSBA acted as the business broker, engaged by the sellers for the transaction, marketing GBHI

to potential buyers and facilitating the eventual sale. Mr. Pallini earned a substantial

percentage-based commission from the successful sale of the business. (ECF #11, ¶18)

Plaintiffs allege that Mr. Pallini transcended the role of mere information conduit of

seller information to become the primary gatekeeper and interpreter of GBHI's financial

information for prospective buyers. He required Plaintiffs to execute a non-disclosure

agreement with him directly to access what he represented as his professional analysis. (ECF

#11, ¶22) Plaintiffs further allege that Mr. Pallini authored and transmitted his own work

product which recast and interpreted the sellers raw financial data into profitability metrics

intended to guide Plaintiffs' valuation and induce an offer. These direct dealings and

customized work place Mr. Pallini squarely within ¶552 of the *Restatement (Second) of Torts* as

an "information supplier" to a limited foreseen recipient (Plaintiffs). *Id.* at ¶24. Specifically,

Plaintiffs allege that Mr. Pallini's financial analysis represented that GBHI generated $650,000

in annual Seller's Discretionary Earnings ("SDE") when in fact the actual SDE was less than

$400,000. Mr. Pallini used his SDE figures to declare that Plaintiffs' initial offer was "way low and won't work." Mr. Pallini allegedly told Plaintiffs that details can be verified during due diligence after an offer has been accepted–structuring the verification to occur only after an offer was accepted. *Id.* at ¶¶37, 33. Mr. Pallini also apparently misrepresented that over $300,000 in routine business expenses shown on GBHI's tax returns were actually "personal expenses" that should be "added back" to calculate true profitability. Id. at ¶¶ 30, 32, 42. Mr. Pallini accepted and transmitted these figures without verifying that the "personal expenses" add-backs actually corresponded to entries in GBHI's books and records consistent with reasonable care. *Id.* at ¶¶ 32, 42, 80. Mr. Pallini's commission was tied to the purchase price paid. The inflated valuation, including overstating SDE and understating expenses, did more than close the deal–it increased his compensation. *Id.* at ¶¶ 19, 55. Plaintiffs also assert that they were unable to independently verify the information because the sellers refused to provide supporting documentation and Plaintiffs lacked the means to compel third-party verification pre-closing. This non-cooperation combined with Mr. Pallini's structured verification sequence, prevented any verification prior to closing. *Id.* at ¶¶ 44, 55).

### Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) allows a defendant to test the legal sufficiency of a complaint without being subject to discovery. *See Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. Ohio 2003). In evaluating a motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff, accept its factual allegations as true, and draw reasonable inferences in favorable of the plaintiff. *See*

*Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).  The court will not, however, accept conclusions of law or unwarranted inferences cast in the form of factual allegations.  *See Twombly, 550 U.S. at 555; Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. Tenn. 2000). In order to survive a motion to dismiss, a complaint must provide the grounds of the entitlement to relief, which requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action.  *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007). That is,"[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citation omitted); *see Association of Cleveland Fire Fighters v. City of Cleveland*, No. 06-3823, 2007 WL 2768285, at *2 (6th Cir. Ohio Sept. 25, 2007) (recognizing that the Supreme Court "disavowed the oft-quoted Rule 12(b)(6) standard of *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed.2d 80 (1957)").  Accordingly, the claims set forth in a complaint must be plausible, rather than conceivable.  *See Twombly*, 127 S. Ct. at 1974.

On a motion brought under Rule 12(b)(6), the court's inquiry is limited to the content of the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account.  *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. Ohio 2001).

### Analysis

In their motion to dismiss, Defendants assert that Count I of the FAC fails to state a claim for negligent misrepresentation because Plaintiffs fail to identify a duty that Defendants owed to Plaintiffs as a matter of law. Next, Defendants assert that Plaintiffs' fraud claim fails

because it was not pled with the specificity required by Fed. R. Civ. P. 9(b). Count III for civil

conspiracy fails because the alleged predicate act was Plaintiffs' fraud claim. Finally, Count IV

for unjust enrichment fails because Plaintiffs did not confer a benefit upon the Defendants.

These arguments will be addressed in order.

### A. Count I Negligent Misrepresentation

Defendants assert that Restatement (Second) of Torts § 552(1), the source of the duty

alleged by Plaintiffs, has not been applied to business brokers by courts in Ohio, thus the FAC

fails to establish that Defendants owed them a cognizable duty and their negligent

misrepresentation claim fails as a matter of law.

The Ohio Supreme Court has applied the Restatement (Second) of Torts § 552(1) to

state the elements of a negligent misrepresentation claim as follows:

> One who, in the course of his business, profession or
> employment, or in any other transaction in which he has a
> pecuniary interest, supplies false information for the guidance of
> others in their business transactions, is subject to liability for
> pecuniary loss caused to them by their justifiable reliance upon the
> information, if he fails to exercise reasonable care or competence
> in obtaining or communicating the information.

*Delman v. City of Cleveland Heights*, 41 Ohio St. 3d 1, 4, 534 N.E.2d 835, 838 (Ohio 1989).

The elements of a negligent misrepresentation claim in Ohio have been further defined in

subsequent cases to limit liability to loss suffered:

> "(a) by the person or one of a limited group of persons for
> whose benefit and guidance he intends to supply the information or
> knows that the recipient intends to supply it; and (b) through
> reliance upon it in a transaction that he intends the information to
> influence or knows that the recipient so intends or in a substantially

-5-

similar transaction." *Gutter v. Dow Jones, Inc.*, 22 Ohio St.3d 286,
288–89, 490 N.E.2d 898, 900 (Ohio 1986) (quoting Restatement of
the Law 2d, Torts (1977), Section 552(2)). Thus, "[t]he
Restatement clearly indicates that liability may be imposed for
negligent misrepresentation only if the disseminator of the
information intends to supply it to a specific person or to a limited
group of people." *Amann v. Clear Channel Communications*, 165
Ohio App.3d 291, 297, 846 N.E.2d 95, 100 (Ohio Ct.App.2006)

*In re Nat'l Century Fin. Enters., Inc., Inv. Litig.*, 580 F. Supp. 2d 630, 647–48 (S.D. Ohio 2008)

Defendants try to limit the application of §522(1) by stating that no Ohio court has

applied it to brokers. Plaintiffs contend that the duty analysis under §552 is a functional test, not

governed by titles such as broker or accountant, and turns on whether the defendant supplied

false information for the guidance of a specifically identified recipient and had a pecuniary

interest in the transaction–elements that Plaintiffs have pled in their FAC. Review of the FAC

shows that Plaintiffs have sufficiently pled the elements of a negligent misrepresentation claim.

### B. Count II Fraudulent Inducement

Plaintiffs aver that their fraudulent inducement claim is an alternative to Count I made

to preserve potential theories of recovery should discovery reveal additional facts. "Plaintiffs

plead that Defendants' conduct *may have involved* knowing or reckless disregard of the truth."

ECF #11 ¶87. Defendants point to the conditional language used in parts of Count II– "may

have involved knowing or reckless disregard of the truth," "potentially fraudulently" ratified

financial statements, "possibly actively concealing" to assert that plaintiffs' fraudulent

inducement claim is speculative and does not survive the particularity requirement of Fed. R.

Civ. P. 9(b) when pleading allegations of fraud.

Rule 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). To satisfy the particularity requirement when bringing a fraudulent inducement claim, a plaintiff must generally "allege the time, place, and content of the alleged misrepresentations on which [the plaintiff] relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *U.S. ex rel. Marlar v. BWXT Y-12, LLC*, 525 F.3d 439, 444 (6th Cir. 2008). The additional pleading requirements, however, "should not be read to defeat the general policy of 'simplicity and flexibility' in pleadings contemplated by the Federal Rules." *U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 503 (6th Cir. 2008). Rather, when a plaintiff "pleads in sufficient detail ... to allow the defendant to prepare a responsive pleading, the requirements of Rule 9(b) will generally be met." *Id.* at 504.

Here, the FAC pleads time, place and content of the alleged misrepresentations on which Plaintiffs relied to their detriment. Specifically, the emails and spreadsheet sent by Mr. Pallini, with dates and content were set out:

• April 3, 2021: Pallini emailed Plaintiffs claiming that business expenses shown on tax returns included personal expenses that could be "added back." (FAC ¶¶ 30, 42);

• April 13, 2021: Pallini transmitted "Glass Block HQ Info.xlsx" showing SDE of $650,675 (2020) and $631,356 (2019) when actual SDE was substantially less than $400,000. (FAC ¶¶ 34, 37);

• April 13, 2021: Pallini used these figures to declare Plaintiffs' offer "way

-7-

low and won't work." (FAC ¶ 33);

      • April 23, 2021: Pallini represented to Plaintiffs that GBHI's owners worked "approximately 20 hours per week" when in fact they worked full-time. (FAC ¶ 39); and

      • May 10-11, 2021: The sellers provided vendor reports that omitted suppliers exceeding $10,000/year, which served to corroborate Pallini's earlier misrepresentations about add-backs and GBHI's financial condition, as part of the broader fraudulent scheme. (FAC ¶ 46).

      The conditional statements noted by Defendant relate to the Defendants' intent, knowledge, and scienter which may be alleged generally under Rule 9(b). The FAC pleads facts which permit a plausible inference of intent, knowledge or recklessness:

      –Financial incentive as a result of Pallini's commission calculated as a percentage of the purchase price (FAC ¶ 19) created an incentive to promote the falsely represented profitability.

      –The magnitude of the discrepancy between the represented SDE ($650,000) and the actual SDE (substantially less than $400,000) (FAC ¶¶ 34, 37). This material difference would warrant verification by a competent professional with 35 years of experience like Mr. Pallini–leading to an inference of intent, knowledge or reckless indifference.

      –Professional experience and alleged absence of verification–despite his representations of 35 years of business broker experience and knowledge, the FAC alleges that Mr. Pallini accepted and transmitted claimed "add-backs" exceeding $300,000, which he endorsed, apparently without verifying whether they corresponded to actual expenses in GBHI's books and records. (FAC ¶¶ 30, 32, 42) This may lead to a plausible inference of reckless disregard

for the truth or knowledge.

–The FAC alleges that Mr. Pallini told Plaintiffs that verification could occur "after an offer has been accepted." (FAC ¶ 33). This structure–conditioning verification on prior commitment–supports inference of knowledge in that a defendant who knows that figures may not withstand scrutiny has an incentive to structure verification to occur after commitment to price.

These allegations, if taken as true, based on specific facts, dates, documents and amounts permit a plausible inference of scienter as permitted by Rule 9(b). The FAC here pleads fraudulent inducement in sufficient detail to allow the defendant to prepare a responsive pleading thereby satisfying the requirements of Rule 9(b). *U.S. ex rel. SNAPP, Inc., supra*, 532 F.3d. at 504.

### C.  Count III Civil Conspiracy

Defendants move to dismiss Plaintiffs' civil conspiracy claim because the underlying unlawful act of the civil conspiracy is Defendants' fraudulent inducement and since the fraudulent inducement claim fails, there is no underlying tort that could possibly serve as the civil conspiracy predicate. However, as the Court has determined that Plaintiffs have adequately pled a claim of fraudulent inducement, Defendants' basis for dismissing Plaintiffs' civil conspiracy claim fails and the civil conspiracy claim will remain.

### D.  Count IV Unjust Enrichment

Defendants argue that Plaintiffs' unjust enrichment claim fails because the alleged

benefit conferred on Defendants was not conferred by Plaintiffs and because there are no circumstances rendering the retention of the benefit unjust.

In Ohio, in order to state a claim for unjust enrichment, the plaintiff must show that: "(1) a benefit was conferred by the plaintiff on the defendant, (2) the defendant had knowledge of the benefit, and (3) the defendant retained the benefit under circumstances in which it was unjust to do so without payment." *Bunta v. Superior VacuPress, LLC*, 171 Ohio St. 3d 464, 474 (2022) Plaintiffs admit that they did not pay the Defendants' commission here–it was paid by the sellers. Rather, they contend that since Defendants' commission was paid from the sale proceeds funded by Plaintiffs' purchase price, the commission is traceable to Plaintiffs' funds and it would be unjust to permit the Defendants' to retain a commission that was calculated on an allegedly inflated purchase price that was caused by Defendants' conduct.

The Supreme Court of Ohio, however, has established that "an indirect purchaser cannot assert a common-law claim for restitution and unjust enrichment against a defendant without establishing that a benefit had been conferred upon that defendant by the purchaser." *Johnson v. Microsoft Corp.*, 2005-Ohio-4985, ¶ 22, 106 Ohio St. 3d 278, 286, 834 N.E.2d 791, 799. The purpose of the doctrine "is not to compensate the plaintiff for any loss or damage suffered by him but to compensate him for the benefit he has conferred on the defendant." *Id.* at ¶21. Plaintiffs have not alleged that an economic transaction occurred between Plaintiffs and Defendants, and therefore, as was the case in *Johnson*, Plaintiffs cannot establish that Defendants retained any benefit to which they were not entitled. Accordingly, Plaintiffs' claim for unjust enrichment (Count IV) is dismissed.

## CONCLUSION

For the reasons set forth above, the Defendants' Motion to Dismiss the First Amended

Complaint is granted as to Count IV for unjust enrichment and denied as to Counts I, II, and III.

IT IS SO ORDERED.

DONALD C. NUGENT
United States District Judge

DATED: _November 22, 2025_